# STATE OF MICHIGAN

# COURT OF APPEALS

---

FIDELITY NATIONAL TITLE INSURANCE
COMPANY,

        Plaintiff,

v

CHS-HAMILTON, INC. f/k/a HAMILTON
FARM BUREAU COOPERATIVE, INC.,

        Defendant-Appellant,
and

JOHN WILTZER and JOHN J. WILTZER, INC.,

        Defendants-Appellees.

UNPUBLISHED
October 30, 2014


No.   316084
Grand Traverse Circuit Court
LC No.   2011-028825-CZ

---

Before:  FITZGERALD, P.J., and GLEICHER and RONAYNE KRAUSE, JJ.

PER CURIAM.

The trial court granted the motion of defendants John Wiltzer and John Wiltzer, Inc. (collectively Wiltzer) for sanctions against its codefendant CHS-Hamilton, Inc. (Hamilton), which now appeals as of right. Hamilton's defense in this action was supported by both fact and law and therefore was not frivolous. Accordingly, we reverse the imposition of sanctions in Wiltzer's favor and remand for entry of an order to that effect.

## I. BACKGROUND

Hamilton is a supplier of building materials in the Traverse City area. In or around 2002, John Wiltzer and his construction company, John J. Wiltzer Inc., purchased materials on credit from Hamilton to construct several homes. Wiltzer did not pay in a timely fashion. Accordingly, Wiltzer gave Hamilton a mortgage interest to secure payment on a promissory note. Pursuant to the promissory note recorded with the mortgage, Wiltzer promised to make $6,000 monthly payments and to give Hamilton $15,000 from the sale of each subject property, for an aggregate payment of $247,000 by December 31, 2003. The entirety of the secured debt was over $360,000. The mortgage and promissory note were recorded with the register of deeds on August 19, 2003.

-1-

In 2004, Wiltzer sold a home subject to the mortgage to Thomas and Andrea Perosky. Wiltzer remitted $15,000 of the purchase price to Hamilton as promised. However, Wiltzer did not otherwise keep up with his payment requirements. In connection with the Perosky sale, Wiltzer also did not disclose the Hamilton mortgage. And the title company failed to discover the properly filed mortgage when conducting its title search.

In 2010, the Peroskys sold their property to Kenneth McNeil. The Hamilton mortgage was discovered during the title search in connection with that sale. Fidelity National Title Insurance Company (Fidelity), which insured the title in connection with the sale, approached Hamilton to request a discharge of the mortgage. Hamilton instead threatened to foreclose its lien. At that time, Wiltzer owed Hamilton more than $275,000. To protect its client's interests and to avoid foreclosure, Fidelity paid Hamilton $147,000. In exchange, Hamilton gave Fidelity a partial assignment of it promissory note and discharged its mortgage. McNeil then took the property free and clear.

Fidelity quickly filed suit against Wiltzer for his fraudulent omission of the Hamilton mortgage during the 2004 sale. Fidelity dismissed this action and filed a new suit against Wiltzer and Hamilton. Hamilton claims it was added as a defendant when Fidelity determined that Wiltzer was uncollectible. Rather, it appears from the record that Fidelity added Hamilton as a defendant for two reasons. First, Hamilton had discharged mortgages covering other pieces of Wiltzer's construction property when Wiltzer paid $15,000 of the purchase price to Hamilton. This "practice" required the discharge of the mortgage over the current property upon payment of $15,000, according to Fidelity's theory. Second, in 2005, Wiltzer filed for bankruptcy. Hamilton filed an adversary proceeding against Wiltzer in the bankruptcy proceeding. Wiltzer and Hamilton reached a settlement agreement by which Wiltzer would pay Hamilton $5,000 in exchange for a release of the remainder of the debt. The settlement continued, "The parties . . . forever release and discharge one another . . . from any and all claims, demands, equitable relief, damages, cost, expenses, administrative actions, and causes of action of any kind or character which now exist or which may hereafter arise . . ."

In its amended complaint against Hamilton, Fidelity alleged:

> 11. Upon information and belief, Hamilton and Wiltzer would meet from time to time to review the account, and as individual properties were sold, payments outside of the closing process were made, and partial discharges of lien were prepared and filed. In this instance, no discharge was filed. The plaintiff reserves the right to amend the complaint to include allegations obtained through discovery concerning further representation of Wiltzer and Hamilton concerning discharges of mortgages on partial payment of the loan.

Fidelity described its settlement negotiations with Hamilton and averred that Hamilton told it that there remained an unsatisfied lien on the property of $147,000 or greater. Fidelity continued:

> 18. Upon information and belief said representation of Hamilton was false, to wit: that said lien on the subject property had been satisfied when i[n] fact i[t] had not, and/or there was no limitation on recovery when in fact said lien was either $5,000 or $15,000 on the subject property.

* * *

22. Upon information and belief, and as the proofs may show, said representations of Hamilton intended to induce settlement of the claim were false. Where in fact it was obligated to file a discharge of the subject <u>mortgage as required by MCL 565.41</u>. Plaintiff relied on said representations to its detriment and paid $147,000 to Hamilton.

Accordingly, Fidelity sought "compensatory and exemplary damages including those provided for by <u>MCL 600.2919a, and MCL 565.44</u>."

Following discovery, the parties filed competing motions for summary disposition. Hamilton's defense throughout and in support of its motion for summary disposition was based on the plain language of the promissory note and mortgage. Nothing in those documents supported discharge of the mortgage before full repayment of the debt. And nothing in those documents supported Fidelity's claim that Hamilton had a practice of releasing the liens over parcels upon payment of $15,000, rather than the entire $360,000 debt. As Wiltzer never paid its debt in full, Hamilton contended that its duty to discharge the mortgage never triggered.

The circuit court denied Hamilton's motion, granted summary disposition in favor of Fidelity, and ordered Hamilton to repay Fidelity $147,000. Although Hamilton complains of that award, it has not appealed the circuit court's judgment in this regard. A transcript was not prepared for the hearing at which the court explained the basis for its ruling. From statements at a later hearing, however, it appears that the circuit court concluded that the mortgage over the subject parcel should have been discharged upon Wiltzer's payment of $15,000 from the selling price of that property and the failure to do so was "a predatory practice."[1]

Fidelity sought sanctions against Hamilton and the circuit court granted that request. In doing so, the court noted that Hamilton's legal arguments based on the plain language of the mortgage and promissory note had merit. However, the court concluded that "there was no reasonable basis to believe the underlying facts were true." Specifically, the evidence revealed that Hamilton was aware of a national practice to discharge mortgages over a piece of property that is part of a larger construction project when the construction company pays the material supplier a portion of the sales price from that piece of property. The court described as "predatory and outrageous" Hamilton's failure to enter such a discharge in this case. Hamilton does not appeal that ruling either.

Wiltzer then filed a motion for sanctions against its codefendant Hamilton. The motion was short, citing the grounds raised by Fidelity in its motion and the court's ruling in that regard. Hamilton responded that Wiltzer was not entitled to sanctions because (1) its defense was not frivolous and (2) Wiltzer could have eliminated his litigation costs by filing a motion for

---

[1] The trial court did not rely on the settlement agreement reached between Hamilton and Wiltzer in the Wiltzer bankruptcy proceedings, either in resolving the issues on the merits or in its subsequent decisions to impose sanctions.

summary disposition based on the statute of limitations. Any attorney fees incurred by Wiltzer in defending against Fidelity's lawsuit were therefore unreasonable. As with Fidelity, the circuit court found that Hamilton's position was factually frivolous and awarded sanctions. Hamilton now challenges that ruling alone.

## II. ANALYSIS

We review for clear error a trial court's conclusion that an action or defense is frivolous and warrants the imposition of sanctions. *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002). "Clear error exists when some evidence supports the circuit court's finding, but a review of the entire record leaves this Court with the definite and firm conviction that the circuit court made a mistake." *Hills & Dales Gen Hosp v Pantig*, 295 Mich App 14, 19; 812 NW2d 793 (2011).

A court is permitted to impose sanctions against a party based on a frivolous defense under MCR 2.114(F) ("[A] party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2)."). Sanctions are also permitted by MCL 600.2591, which provides in relevant part:

> (1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.
>
> * * *
>
> (3) As used in this section:
>
> (a) "Frivolous" means that at least 1 of the following conditions is met:
>
> (i) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.
>
> (ii) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.
>
> (iii) The party's legal position was devoid of arguable legal merit. . . .

"Whether a claim is frivolous . . . depends on the facts of the case." *Kitchen*, 465 Mich at 662. "The mere fact that [a party] did not ultimately prevail does not render" its arguments frivolous. *Id.*

The trial court's imposition of sanctions also flows from MCR 2.114(D)(2) and (E), which allow for the award of reasonable expenses when the opposing party's pleadings are not "well grounded in fact" or are not "warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law."

Here, Hamilton raised a legally and factually supportable defense based on the plain language of the Wiltzer mortgage and promissory note. As noted by the trial court itself, "This is a state that strictly construes agreements according to the four corners and gives words their ordinary meaning . . . ." The subject mortgage provides that it was "given to secure payment of certain debt obligations evidenced by a certain Promissory Note." The mortgage does not describe the debt or the conditions upon which a discharge must be granted. The promissory note outlines Wiltzer's agreement to repay Hamilton $360,517.14. It provides:

> Payments of principal and interest will be made on or before the final business day of each month. Principal payments will include, but will not be limited to, (1) payments of $6,000.00 each month, (2) proceeds of at least $15,000.00 each for the sale of each speculation home sold until satisfaction of the note, to be paid within five days from the date on which such proceeds are received by Borrower; and (3) two additional service charge payments of $6,000 each in May and June of 2003. Borrower will pay a minimum of $274,000.00 in principal payments to Lender during the twelve-month period ending December 31, 2003. . . . The entire amount of this note, principal and interest shall be repaid on or before September 30, 2004.

In relation to the discharge of the mortgage, the promissory note states: "This note shall be secured by mortgages on each speculation home owned by Borrower, and on each speculation home constructed by Borrower until satisfaction of the note." Nothing in the mortgage or the promissory note requires Hamilton to discharge its mortgage, in whole or in part, until full repayment of Wiltzer's debt, a condition that never occurred in this case.

Hamilton's failure to discharge the mortgage was also legally supported by MCL 565.41, upon which Fidelity relied to support the opposite conclusion. MCL 565.41(1) requires a mortgagee to file a discharge with the register of deeds, only "after a mortgage has been paid or otherwise satisfied." Liability for failure to file a discharge arises only "after full performance of the condition of the mortgage." MCL 565.44(1). As full payment never occurred, the condition precedent for discharge was not met and Hamilton's statutory duty to file a mortgage discharge was not triggered.

Despite the legal validity of Hamilton's defense, the trial court found "there was no reasonable basis to believe the underlying facts were true." Specifically, the court concluded that Wiltzer had remitted to Hamilton $15,000 from the purchase price paid by the Peroskys. That payment "should have generated a discharge of [the] mortgage associated with this separate piece of property," the court asserted. The court continued:

> Other lots received this treatment and it makes sense other lots and homes would have been sold with these discharges and that the first and second or third or fourth homes aren't going to be satisfying the entire Wiltzer mortgage debt in order to buy a simple home, it makes absolutely no sense whatsoever and, quite frankly, was in this Court's view inconsistent with one of the operative written documents [which the court did not identify on the record].

-5-

However, Hamilton had sufficient facts to support its defense. It is undisputed that Wiltzer defaulted on the promissory note and never repaid his debt in full. Nothing more was required under the plain language of the mortgage documents to refute that Hamilton had a duty to discharge the mortgage. Even if Hamilton had reached specific agreements with Wiltzer in relation to other speculation homes and discharged those mortgages after partial payment, this would not force a discharge in connection with other properties. Given the factual support for Hamilton's defense, we are left with a "definite and firm conviction that the circuit court made a mistake" in imposing sanctions. See *Hills & Dales Gen Hosp*, 295 Mich App at 19. That the court disagreed with Hamilton's business practices did not render its defense frivolous and did not justify the sanctions order.

We reverse and remand for entry of an order consistent with this opinion. We do not retain jurisdiction.

/s/ E. Thomas Fitzgerald
/s/ Elizabeth L. Gleicher